BARRACK, RODOS & BACINE
STEPHEN R. BASSER (121590)
sbasser@barrack.com
SAMUEL M. WARD (216562)
sward@barrack.com
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874

*Attorneys for Plaintiff*

(*Additional Counsel listed on signature page*)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM B. COTTRELL, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> APPLE, INC, a California Corporation, <br><br> Defendants. | Case No.: 5:15-cv-05205 <br><br> **CLASS ACTION COMPLAINT:** <br><br> **(1) CALIFORNIA UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200, et seq.)** <br><br> **(2) CALIFORNIA FALSE ADVERTISING LAW (Cal. Bus. & Prof. Code § 17500,** *et seq.***); and** <br><br> **(3) NEGLIGENT MISREPRESENTATION** <br><br> **DEMAND FOR JURY TRIAL** |

Class Action Complaint

## CLASS ACTION COMPLAINT

Plaintiff WILLIAM B. COTTRELL ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendant Apple, Inc. ("Apple" or "Defendant"). Plaintiff alleges the following upon information and belief, based upon, *inter alia*, an investigation conducted by his attorneys, except as to those allegations pertaining to himself personally, which he alleges upon personal knowledge:

## SUMMARY OF THE ACTION

1. In mid-September 2015, Apple introduced and released the iOS 9 operating system, which includes "Wi-Fi Assist," a feature that keeps consumers' internet connections alive when internet via a wireless local area network ("Wi-Fi") is compromised. The feature automatically switches consumers to a cellular connection if it senses that the Wi-Fi signal is too weak.

2. The purpose of the feature is to boost smartphone speeds. Unfortunately, the setting does so at the expense of data usage. Apple's software engineers prioritized one over the other. Because the Wi-Fi Assist is left in activated mode, consumers' iPhones automatically use cellular data upon determining that a Wi-Fi router signal is weak. While this results in faster network connections for iPhone users, it eats up the data allotted by cell phone carriers to consumers, except those who possess unlimited data cell phone plans, thereby causing millions of consumers economic losses in the nature of excess data usage charges or fees.

3. The matter arises from Defendant's failure to adequately and timely disclose to consumers –putative class members– that this automatic switch to cellular data caused by an activated Wi-Fi Assist (the default setting) can result in exceeding the data capacity allowed under consumers' phone plans, with consequent economic harm. Defendant only disclosed this problem and harm after it was compelled to say something in the wake of third party revelations amid consumer complaints.

1 – Class Action Complaint

## JURISDICTION AND VENUE

4. This Court has original jurisdiction by reason of 28 U.S.C. §1332 and pursuant to 28 U.S.C. §1332(d)(11) because there are one hundred or more persons whose individual claims are being brought herein; Plaintiff is a citizen of a different state than Defendant; and the overall amount in controversy exceeds $5,000,000.00, exclusive of costs, interest, and attorneys' fees. The individual claims can be tried jointly in that they involve common questions of fact and law.

5. This Court has personal jurisdiction over the Defendant because it conducts substantial and continuous business in California.

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(a) and (b) because part of the events or omissions that give rise to the claims occurred in California and this District, and because Defendant is both headquartered and conducts a substantial part of its business in Cupertino, California, which is in this District.

## PARTIES

7. Plaintiff William B. Cottrell is a resident of Little Rock, Arkansas and is an owner of an Apple iPhone with the new iOS 9 operating system. Plaintiff was unaware that this iOS 9 upgrade automatically activated Wi-Fi Assist on his device, which ultimately resulted in his absorbing data overuse charges by his cellular service provider.

8. Defendant Apple, Inc. is a corporation organized under the laws of the State of California, and has its principal place of business in Cupertino, Santa Clara County, California.

## SUBSTANTIVE ALLEGATIONS

9. Wi-Fi Assist, which was introduced to iOS with the release of iOS 9.0, uses data to supplement a spotty Wi-Fi connection – an unfortunate and ironic twist for people taking advantage of Wi-Fi to save on data usage. Wi-Fi Assist automatically connects to a cellular network to boost connectivity whenever a Wi-Fi signal is weak. Defendant's decision to ensure that Wi-Fi Assist's default setting was activated unfairly subjected Plaintiff and other unsuspecting consumers to overuse charges and/or early usage of available data leading to

incurring new charges to increase data allotment or loss of ability to use their device as usual. As a result consumer users with limited data plans collectively tallied up a significant amount of overage fees arising from their phones constantly using the feature.

10. Defendant intentionally chose to have the default setting of the Wi-Fi Assist as activated, while at the same time choosing not to advertise the likelihood of data overcharges to consumers that do not have an unlimited data plan.

11. Nor did Apple disclose to, or warn consumers about, the inherent problem with respect to its Wi-Fi Assist feature and its consequent threat of increased phone charges. Any warning or disclosure to consumers ultimately arose in and through the internet or media. For example, on September 29, 2015, Fortune.com cautioned:

> If Wi-Fi Assist is left activated, your iPhone will automatically use cellular data whenever it finds that a Wi-Fi router signal is weak. This results in faster network connections for your phone, but it will eat up the data allotted by your cell phone plan. If you don't have an unlimited data plan, this could be a big problem when your next phone bill arrives. That's right, extra fees.[1]

12. The Washington Post published an article on September 29, 2015, warning consumers of the Wi-Fi Assist's capability to silently switch a phone to cellular data:

> The setting, called "Wi-Fi Assist," automatically switches your phone over to the cellular network when you're in a place with spotty Wi-Fi. The feature is on by default in iOS 9, meaning that your iPhones and iPads will seek out cell networks unless you tell them not to — and could potentially eat up your data plan without you realizing it.[2]

---

[1] http://fortune.com/2015/09/29/wifi-assist-apple-iphone-setting/

[2] https://www.washingtonpost.com/news/the-switch/wp/2015/09/29/apples-wifi-assist-gets-blamed-for-surprisespikes-in-data-use/

3 – Class Action Complaint

13. Confronted with the fact that the problem caused by the Wi-Fi Assist feature had been publicly exposed, Apple belatedly made some effort to warn consumers, albeit in an inadequate, watered down fashion. On October 2, 2015, commenting on Wi-Fi Assist, Apple stated: "Because you'll stay connected to the [i]nternet over cellular when you have a poor Wi-Fi connection, you might use more cellular data."

14. Apple's warning failed to address or account for the reality that normal usage by iPhone consumers includes streaming music and videos, and running various applications – all of which use significant data. The problem created by Wi-Fi Assist was far more significant than Apple confessed. As CEO Tim Cook has acknowledged, more than half of Apple's mobile device users downloaded the new operating system. Millions of innocent consumers have been harmed by virtue of Apple's lack of a prior, clear and adequate warning. Collectively, excess cell phone charges for data usage consumers otherwise would not have absorbed exceeds $5,000,000.00 and is an amount to be determined after the benefit of discovery and according to proof at trial.

15. Plaintiff was unaware that Wi-Fi Assist would likely result in data overuse charges if not disabled. Plaintiff has suffered data overuse charges far exceeding the data allowable on his iPad under his plan with his cellular provider.

16. There have been a stream of complaints regarding class members who have suffered significant increased data usage and consequent materially cellular phone charges:[3] The following consumer complaint is just one example, among others:

> … iOS 9 has one seemingly innocuous feature: Wi-Fi Assist, enabled by default, which will switch to cellular data when your Wi-Fi sucks. This would be great, if I had an unlimited data plan. I don't, but now I do have a very expensive cell phone bill.

---

[3] http://www.techinsider.io/apple-wifi-assist-feature-vs-battery-life-2015-10

> I've been using Wi-Fi Assist on my iPhone for a few months … since downloading the iOS 9 beta that introduced Wi-Fi assist, I've used around a third more data a month (4GB vs my regular-as-clockwork 3GB).[4]

17. Chris Mills, a writer for technology site *Gizmodo,* has noted that since he started testing the beta version of iOS 9, his data usage increased by around a third.

## CLASS ACTION ALLEGATIONS

18. Plaintiff brings this action on his own behalf and on behalf of the following Classes:

**iOS 9 Class:** All persons or entities in the United States who purchased an iPhone or iPad with a cellular data plan with iOS 9 pre-installed for purposes other than resale or distribution, or who upgraded an iPhone or iPad with a cellular data plan to iOS 9.

**iOS 9 California Claims Class**: All persons or entities who purchased an iPhone or iPad with a cellular data plan with iOS 9 pre-installed for purposes other than resale or distribution or upgraded an iPhone or iPad with a cellular data plan to iOS 9 with respect to California Business & Professions Code 17200 claims.

19. This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

20. **Numerosity.** The Class is so numerous that joinder of all members is impracticable. Upon information and belief, there are thousands of Class members throughout the United States.

21. **Commonality.** There are questions of law and fact which are common to the Class. The common questions, which are each separate issues, which should be certified for classwide resolution pursuant to Fed. R. Civ. P. 23(c)(4), include, but are not limited to:

---

[4] http://reviews.gizmodo.com/ios-9s-wi-fi-assist-is-eating-my-cell-data-1733513159

5 – Class Action Complaint

    a.    Whether electing to allow the default setting for Wi-Fi Assist to be activated was an unfair and deceptive business act;

    b.    Whether Defendant owed a duty of care to the Class;

    c.    Whether Defendant's advertising, marketing, product packaging, and other promotional materials were untrue, misleading, or reasonably likely to deceive.

    d.    Whether Defendant knew that its representations and/or omissions regarding the Wi-Fi Assist were false or misleading, but continued to make them;

    e.    Whether Apple committed misconduct as set forth in this Complaint and thereby engaged in unfair or unlawful business practices pursuant to Cal. Bus. & Prof. Code § 17200, et seq. and violated the Cal. Bus. & Prof. Code § 17500, et seq.;

    f.    Whether Defendant was unjustly enriched; and

    g.    Whether Plaintiff and the Class members are entitled to actual, statutory, and punitive damages.

22. **Typicality.** Plaintiff's claims are typical of the claims of the other Class members and Plaintiff does not have any interests adverse to the Class. Specifically, Plaintiff and all the Class members sustained damages arising out of Defendant's wrongful course of conduct. The harms suffered by Plaintiff are typical harms suffered by the Class members, and Plaintiff and other Class members have an interest in preventing Defendant from engaging in such conduct in the future.

23. **Adequacy.** Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protects the interests of the Class.

24. **Superiority and Manageability.** The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with

respect to individual Class members which would establish incompatible standards of conduct for the party opposing the Class. Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. In addition, certification of specific issues such as Defendant's liability is appropriate.

## COUNT I

## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW

### (Cal. Bus. & Prof. Code §§ 17200, et seq.)

25. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

26. Plaintiff brings this claim on behalf of himself and the proposed Class.

27. The California Unfair Competition Law ("UCL") prohibits acts of unfair competition, including any "unlawful, unfair or fraudulent business act or practice."

28. The UCL imposes strict liability. Plaintiff does not have to prove Defendant intentionally or negligently engaged in unlawful, unfair or fraudulent business acts or practices. Instead, Plaintiff only has to prove such acts or practices occurred.

29. Defendant engaged in unlawful business acts and practices in violation of the UCL by engaging in unfair, unlawful and fraudulent business acts or practices as described herein, including but not limited to, failing to disclose that Wi-Fi Assist's default setting could cause significant data overuse charges.

30. Defendant's practices are likely to deceive, and have deceived, members of the public.

31. Defendant knew, or should have known, that its misrepresentations, omissions, failure to disclosure and/or partial disclosures omit material facts and are likely to deceive a reasonable consumer.

32. Defendant continued to make such misrepresentations despite the fact that it knew or should have known that its conduct was misleading and deceptive.

33. By engaging in the above-described acts and practices, Defendant committed one or more acts of unfair competition within the meaning of the UCL.

34. Defendant's misrepresentations, business practices and false and misleading advertising regarding Wi-Fi Assist constitute "unfair" business acts and practices because such conduct is immoral, unscrupulous, and offends public policy.

35. Defendant's misrepresentations, business practices and its false and misleading advertising regarding Wi-Fi Assist constitute "fraudulent" business acts and practices because members of the consuming public, including Plaintiff and the Class members, were and are likely to be deceived thereby.

36. The harm to Plaintiff and members of the public outweighs the utility, if any, of Defendant's acts and practices described above and therefore Defendant's acts and practices constitute an unfair business act or practice.

37. Defendant's acts and practices have detrimentally impacted competition and caused substantial harm to Plaintiffs, the Class members, and the consuming public. Plaintiff and the Class members were misled and suffered injuries and lost money or property as a direct and proximate result of Defendant's unlawful business acts and practices.

38. Defendant knew or reasonably should have known its misleading business practices of ensuring the Wi-Fi Assist was activated and failing to provide real-time notice that the phone switched to cellular data was likely to deceive reasonable consumers. Likewise, Defendant knew or reasonably should have known its misrepresentations and omissions regarding Wi-Fi Assist's capabilities and functions were and are likely to deceive reasonable consumers.

39. Defendant's misrepresentations and its false and misleading business practices present a continuing threat to consumers in that such advertising will continue to mislead consumers.

40. Plaintiff reserves the right to identify additional provisions of law violated by Defendant as further investigation and discovery warrants.

41. By reason of the foregoing, Defendant should be required to pay damages and/or make restitution to Plaintiff and the Class Members and pay for Plaintiff's and the Class members' attorneys' fees.

## COUNT II

## VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW

### (Cal. Bus. & Prof. Code §§ 17500, et seq.)

42. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

43. Plaintiff brings this claim on behalf of himself and the proposed Class.

44. Defendant Apple is a California company disseminating advertising from its Cupertino, California headquarters throughout the United States.

45. California's False Advertising Law ("CAFAL") provides that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

46. When Defendant disseminated the advertising, it knew, or by the exercise of reasonable care should have known, that the statements concerning Wi-Fi Assist capacity were untrue or misleading, or omitted to state the truth about the Wi-Fi Assist impact on data usage, in violation of CAFAL. Specifically, Defendant failed to disclose that the default setting for Wi-Fi Assist was "activated" and that Wi-Fi Assist provides no notice when it switches to cellular data. Likewise, Defendant knew or reasonably should have known its misrepresentations and omissions regarding Wi-Fi Assist's capabilities and functions were and are likely to deceive reasonable consumers.

1  47. Plaintiffs and the Class members were misled and suffered injuries and lost money or property as a direct and proximate result of Defendant's misrepresentations and its false and misleading advertising regarding Wi-Fi Assist in violation of the CAFAL.

48. As a result of Defendant's wrongful conduct, Plaintiffs and the Class are entitled to restitution and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

49. Pursuant to Cal. Bus. & Prof. Code §§ 17203 & 17535, Plaintiff and the members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ the above-described practices as they pertain to the promotion of Wi-Fi Assist and iOS 9.

50. Likewise, Plaintiff seeks an order requiring Defendant to make full corrective disclosures to correct its prior misrepresentations, omissions, failures to disclose, and partial disclosures.

51. On information and belief, Defendant has failed and refused, and in the future will fail and refuse, to cease its deceptive advertising practices, and will continue to do those acts unless this Court orders Defendant to cease and desist pursuant to Cal. Bus. & Prof. Code § 17535. The corrective statement by Apple did not fully address all misrepresentations.

52. Plaintiff, individually and on behalf of the Class, seeks restitution, disgorgement, injunctive relief, and all other relief allowable under the FAL.

## COUNT III

## NEGLIGENT MISREPRESENTATION

53. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

54. Plaintiff brings this claim on behalf of himself and the proposed Class.

55. Defendant had a duty to timely, fully and adequately disclose to Plaintiff and Class members that the default setting for Wi-Fi Assist was "activated" and that Wi-Fi Assist provides no notice when it switches to cellular data. Defendant also had a duty to disclose the true nature of Wi-Fi Assist's capabilities and functions.

56. Defendant negligently and/or carelessly misrepresented, omitted and concealed from consumers material facts relating to Wi-Fi Assist's capabilities and functions.

57. These misrepresentations and omissions were material and concerned the specific characteristics and Wi-Fi Assist that a reasonable consumer would consider in choosing to allow the application to run on their device.

58. As a result of Defendant's misstatements and omissions, it was under a duty to disclose the additional facts necessary to avoid any misrepresentation or confusion. Further, Defendant knew of its misrepresentations and omissions because Defendant designed and controlled how Wi-Fi Assist would be uploaded on a device – including that the default setting would be "activated."

59. At the time Defendant failed to disclose, concealed, suppressed and/or omitted material information, Defendant knew, or by the exercise of reasonable care should have known, that the statements were false and misleading to reasonable consumers.

60. Plaintiff and Class members justifiably relied upon Defendant's misrepresentations and omissions about the Wi-Fi Assist. Plaintiffs and Class members were unaware of the falsity of Defendant's misrepresentations and omissions and, as a result, justifiably relied on them in allowing Wi-Fi Assist to run as activated on their devices. Had Plaintiff and Class members been aware of the true nature and quality of Wi-Fi Assist, they would not have deactivated it to avoid data overuse charges.

61. As a direct and proximate result of Defendant's misrepresentations and omissions of material fact, Plaintiff and Class members have suffered and will continue to suffer damages and losses as alleged herein in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Apple with respect to their Complaint as follows:

1. Certifying the Class as defined herein;

2. Awarding damages, including compensatory, exemplary, and statutory damages to Plaintiffs and all members of the Class;

3. Issuing and mandating, ordering or awarding injunctive and declaratory relief, as claimed herein;

4. Awarding Plaintiff and the Class punitive damages;

5. Awarding Plaintiff and the Class their reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

6. Such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

DATED: November 13, 2015

Respectfully submitted,
BARRACK, RODOS & BACINE
STEPHEN R. BASSER
SAMUEL M. WARD

/s/ STEPHEN R. BASSER
STEPHEN R. BASSER

600 West Broadway, Suite 900
San Diego, CA  92101
Telephone:  (619) 230-0800
Facsimile:  (619) 230-1874

EMERSON SCOTT, LLP
JOHN G. EMERSON
830 Apollo Lane
Houston, TX 77058
Telephone: (281) 488-8854
Facsimile:  (281) 488-8867

*Attorneys for Plaintiff*